UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JUSTIN EUGENE TAYLOR,<br><br>                     Petitioner. | Criminal Action No. 3:08-CR-326<br>Civil Action No. 3:12-CV-468 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on *pro se* Petitioner Justin Eugene Taylor's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 58). For the reasons set forth below, the § 2255 Motion is DENIED.

**I.      BACKGROUND**

    **a.   *Factual Background***

According to the Statement of Facts (ECF No. 32), starting before January 1, 2001 and continuing through December 14, 2003, Petitioner Justin Eugene Taylor ("Taylor" or "Petitioner") conspired with others to distribute and possess with the intent to distribute marijuana. Taylor and others, known and unknown, would obtain wholesale quantities of marijuana and distribute the marijuana to co-conspirators for redistribution. Also in furtherance of the conspiracy, Taylor and others would arrange wholesale marijuana transactions and, rather than complete the transaction, would take the money from the customer, intentionally fail to distribute the marijuana to the customer, and use the money to finance their own drug trafficking business.

Specifically, prior to August 14, 2003, Taylor met Martin Sylvester ("Sylvester") and Jonathan Hartzell ("Hartzell"). During that meeting, Taylor discussed his ability to supply Sylvester with marijuana for redistribution and exchanged cell phone numbers with Sylvester.

1

On August 14, 2003, Taylor arranged to meet with Sylvester for the purpose of distributing marijuana to Sylvester. Per their arrangement, Taylor met Sylvester and Hartzell at the residence of a mutual acquaintance. Taylor was driven in his car to the residence by a co-conspirator, who dropped Taylor off without being seen. Taylor met with Sylvester and Hartzell at the residence and then rode in Hartzell's car with Hartzell and Sylvester to the area of Hanover Avenue and North Lombardy Street, in Richmond, Virginia, in order to obtain marijuana for Sylvester. Upon arriving at that area, Taylor asked Sylvester for the money to pay for the marijuana, but Sylvester refused to give the money to Taylor until he saw the marijuana. Taylor left Hartzell's vehicle in order to obtain the marijuana, but he was unable to do so.

Taylor later contacted his co-conspirator and the two of them devised a plan to steal the money that Sylvester had to purchase the marijuana. Pursuant to that plan, the co-conspirator who was armed with a 9mm semiautomatic pistol would pose as the drug dealer, meet with Sylvester and demand to see the purchase money. Upon Sylvester showing the co-conspirator the money, the plan was for the co-conspirator to take the money by force and flee the area with Taylor in Taylor's car.

Pursuant to this plan, the co-conspirator went to the alleyway located between Hanover and Grove Avenues, and North Lombardy and North Vine Streets. Taylor called Sylvester and told him to meet the man in the alleyway to obtain the marijuana. Taylor then went to his car to wait for the co-conspirator.

The co-conspirator met Sylvester in the alleyway, displayed the 9mm semiautomatic pistol and demanded Sylvester's marijuana purchase money. Sylvester resisted, the pistol discharged and Sylvester was fatally shot. The co-conspirator fled to Taylor's car and the pair fled the area. Sylvester died the next day from the gunshot wound.

b. *Procedural Background*

On February 4, 2009, a federal grand jury in the Eastern District of Virginia returned a

seven-count second superseding indictment[1], charging Taylor with (1) conspiracy to possess with intent to distribute and distribute marijuana, in violation of 21 U.S.C. § 846 ("Count One"); (2) attempt to distribute marijuana, in violation of 21 U.S.C. § 846 ("Count Two"); (3) possess a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) ("Count Three"); (4) use and carry firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count Four"); (5) conspiracy to interfere with commerce by threats and violence, in violation of 18 U.S.C. § 1951 ("Count Five"); (6) interference with commerce by threats and violence, in violation of 18 U.S.C. §§ 2 and 1951 ("Count Six"); and (7) use and carry firearm during and in relation to a felony crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Seven").

On February 13, 2009, Taylor entered into a written plea agreement with the United States, wherein he pleaded guilty to Counts Five and Seven of the second superseding indictment. (ECF No. 31.) In anticipation of sentencing, a presentence investigation report ("PSR") was prepared. The probation officer found that the applicable guideline range was the First Degree Murder guideline contained in U.S.S.G. § 2A1.1. (ECF No. 66, at 184.) After deducting two points for acceptance of responsibility, the probation officer calculated that Taylor's offense level was 41 and his criminal history category was III, resulting in an advisory guideline range of 360 to life. (*Id.* at 189.) Taylor filed two motions in response to the PSR: (1) a motion for downward departure from the First Degree Murder guidelines to the Second Degree Murder guidelines, (*see* ECF No. 65, Ex. 2 [hereinafter, "JA-2"], at 51); and (2) a motion for redetermination of criminal history category, (*see id.*, at 54). At the sentencing hearing on May 14, 2009, this Court denied both motions and sentenced Taylor to 240 months' imprisonment on Count Five, and 120 consecutive months' imprisonment on Count Seven.

On May 19, 2009, Taylor filed a timely notice of appeal to the Fourth Circuit. (ECF No.

---

[1] A federal grand jury returned the original indictment on July 10, 2008 (ECF No. 1), and the first superseding indictment on December 2, 2008 (ECF No. 9).

3

42.) On January 7, 2011, the Fourth Circuit granted the government's motion to dismiss, finding that Taylor knowingly and voluntarily waived his right to appeal and that the issues he sought to raise on appeal fell within the compass of that waiver. (*See* Gov'ts Resp., Ex. 5.) Taylor then filed a petition for rehearing, which was denied on February 22, 2011. (*Id.* at Ex. 6.) Taylor's petition for a writ of certiorari to the Supreme Court was likewise denied. (*Id.* at Ex. 7.)

On June 26, 2012, Taylor filed the instant § 2255 Motion. In his § 2255 Motion, Taylor alleges three grounds for relief:[2]

> Ground One: Taylor did not waive his right to appeal
>
> Ground Two: The District Court erred by applying the wrong sentencing guideline manual in violation of the ex post facto clause of the Constitution
>
> Ground Three: Ineffective Assistance of Counsel

The United States filed a response in opposition on October 31, 2012 ("Gov'ts Resp.") (ECF No. 64).[3] Taylor has not filed a reply, and his time for doing so has long passed. (*See* ECF No. 59.) The issue is now ripe for review.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958);

---

[2] Taylor's first two grounds for relief are further explained in his memorandum in support attached to his § 2255 Motion.
[3] The Court granted the Government's two motions for extensions of time to file its response. (*See* ECF Nos. 60, 61, 62, 63.)

*United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court generously interprets Taylor's factual allegations and legal contentions.

### III. DISCUSSION

(1) Ground One: Waiver of Appeal

In his first ground for relief, Taylor argues he did not waive his right to appeal in the plea agreement. Specifically, he argues: (1) that the Court instructed him that he could appeal "any sentence;" (2) the Court did not fully question him about the waiver provision in the plea agreement; and (3) he raises constitutional challenges beyond the waiver's reach. (Mem. in Supp. of § 2255 Mot. at 6–8.) Taylor raised these identical arguments on direct appeal to the Fourth Circuit. (*See* Gov'ts Resp. Ex. 1, "Appellant's Opening Brief," at 30–41.) The Fourth Circuit held, "Upon review of the plea agreement and the transcript of the Fed. R. Crim. P. 11 hearing, we conclude that Taylor knowingly and voluntarily waived his right to appeal and that the issues he seeks to raise on appeal fall within the compass of that waiver." (*Id.* at Ex. 5.) An issue decided on direct appeal may not be relitigated on a collateral attack. *United States v. Boeckenhaupt*, 537 F.2d 1182, 1183 (4th Cir. 1976); *Withrow v. Williams*, 507 U.S. 680, 720–21 (1993) (J. Scalia, concurring). As the Fourth Circuit has already fully considered and decided the allegations Taylor raises in his first ground for relief, Taylor cannot relitigate this claim in his § 2255 Motion, and the court must dismiss it accordingly.

(2) Ground Two: Sentencing Guideline Manual

In his second ground for relief, Taylor argues that the Court plainly erred by applying the wrong federal sentencing guidelines manual in violation of the ex post facto clause of the United States Constitution. (§ 2255 Mot. at 6.) In his attached memorandum in support, Taylor additionally argues: (1) the district court erroneously believed it could not depart downwardly to second degree murder because a felony murder had been committed; (2) on remand, the district

court should be instructed to apply the 2003 federal sentencing guidelines manual; and (3) the trial court abused its discretion by failing to explain the basis for its criminal history category determination. (*See* Mem. in Supp. of § 2255 Mot. at 1–6.)

Like the issue of his waiver of appeal, Taylor raised all of the identified issues on direct appeal. (*See* Govt's Resp. Ex. 1, "Appellant's Opening Brief," at 22–30.) Indeed, Taylor's present memorandum in support is taken verbatim from his Fourth Circuit brief. The Fourth Circuit found that the issues were within the scope of Taylor's appeal waiver. (*See id.* at Ex. 5.) As a result, the issues are precluded from collateral review. *See United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009).

(3) <u>Ground Three: Ineffective Assistance of Counsel</u>

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the

6

petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

In the context of guilty pleas, the two-pronged *Strickland* standard similarly applies. However, for the "prejudice" requirement the Court must "focus[] on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Taylor alleges ineffective assistance of counsel for five reasons: (1) counsel's alleged failure to advise Taylor of the stipulations in the plea agreement regarding the appeal waiver; (2) counsel did not advise Taylor to plead to Counts One and Three rather than Counts Five and Seven; (3) counsel offered to flip a coin to determine if Taylor should plead guilty or proceed to trial; (4) counsel's failure to object to the Court's use of the "wrong version" of the sentencing guidelines; and (5) counsel did not argue that the Court should inquire into Taylor's state of mind in determining the validity of a downward departure. (§ 2255 Mot. at 8.)

Taylor's first three arguments all relate to plea agreement related issues. First, the plea agreement specifically noted that "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above." (Plea Agt., ECF No. 31, at ¶ 6.) At the plea colloquy, the Court specifically reviewed the "essential terms" of the plea agreement, including that Taylor "agreed to waive [his] right to appeal any conviction by the Court, as well as any sentence imposed, as long as that sentence is within the maximum provided by statute." (ECF No. 65, Ex. 1 [hereinafter, Joint Appendix-1 ("JA-1")], at 18–19.) Taylor agreed with the recitation of the terms of the plea agreement. (*See id.* at 21–22.) "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). Therefore, Taylor cannot now claim that he was not advised of the appeal

7

waiver in his plea agreement.

Additionally, Taylor cannot demonstrate prejudice. The plea agreement specifically noted that "[t]he defendant will plead guilty because the defendant is in fact guilty of the charged offenses. The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offenses charged beyond a reasonable doubt." (Plea Agt., ECF No. 31 at ¶ 3.) Thus, "[b]y his own admission under oath . . . the government's evidence was sufficient to prove beyond a reasonable doubt all of the essential elements of his crimes of conviction." (Gov'ts Resp. at 22.) Accordingly, Taylor can show no prejudice.

As to Taylor's second claim, that is counsel was ineffective for not seeking a plea agreement on Counts One and Three rather than Counts Five and Seven, the Government submits that Taylor's counsel did in fact request such an agreement, and the Government indeed made an offer to Taylor. "However, the offer included the same language regarding the cross reference to the murder guidelines." (*Id.*) Accordingly, counsel for the government advised Taylor that he would be facing the same guideline range under either agreement. Thus, as the Government argues, Taylor fails to prove either that his counsel's performance was unreasonable, as counsel did in fact request such a plea agreement, or that Taylor was prejudiced.

As to Taylor's third ineffective assistance claim–that counsel offered to flip a coin to determine whether Taylor should plead guilty or go to trial–Taylor again fails to satisfy the *Strickland* standard. Even if counsel did in fact offer to flip a coin, Taylor provides absolutely no argument as to how he was prejudiced by such action. In other words, he provides no evidence that but for counsel's alleged ineffective performance "there is a reasonable probability that . . . he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. For those reasons, this claim too similarly fails.

With regards to Taylor's ineffective assistance claims related to sentencing, Taylor first

8

argues that counsel was ineffective in not arguing that the district court should apply a different version of the sentencing guidelines. However, Taylor cannot demonstrate any prejudice. As the Government highlights, the only difference between the 2003 and 2008 versions of the guidelines was the base offense level for second degree murder. (Gov't's Resp. at 17.)[4] The first degree murder guidelines are the same under both the 2003 and 2008 versions of the guidelines.[5] The Presentence Investigation Report calculated Taylor's offense level based on the First Degree Murder guideline contained in U.S.S.G. § 2A1.1. (ECF No. 66, at 184.) At sentencing, Taylor sought a motion for downward departure from the First Degree Murder guidelines to the Second Degree Murder guidelines. (*See* JA-2, at 51.) After the Court heard arguments of counsel, the Court denied Taylor's motion. (ECF No. 65, Ex. 3 [hereinafter, "JA-3"], at 140) ("[F]irst degree murder was the reference utilized by the Probation Officer, and I think that's the correct reference."). Thus, despite counsel's arguments for a downward departure, the Court ultimately referenced the First Degree Murder guidelines, which produced the same base offense level under either the 2003 or 2008 version of the sentencing guidelines. Furthermore, as the Government submits, Taylor's guideline range was the same under both versions of the guidelines. (Gov't's Resp. at 24.) Therefore, Taylor can show no prejudice and his ineffective assistance claim must accordingly fail. *See Strickland*, 466 U.S. at 697.

Finally, Taylor asserts that counsel was ineffective for failing to argue Taylor's state of mind. But contrary to Taylor's assertion, counsel did in fact argue Taylor's relevant state of mind. Specifically, at sentencing, counsel stated that "at no point in time was it [Taylor's] intention to cause physical harm to the victim." (JA-3, at 131.) Taylor was not even with the victim at the time of the crime. (*Id.*) "[A]t no point in time [did Taylor] ha[ve] an understanding that violence would befall the victim." (*Id.*) Thus, because counsel did argue Taylor's state of

---

[4] Under the 2003 Sentencing Guidelines, the base offense level for second degree murder is 33. U.S.S.G. § 2A1.2 (2003). Under the 2008 Sentencing Guidelines, the base offense level for second degree murder is 38. U.S.S.G. § 2A1.2 (2008).
[5] The base offense level for first degree murder under both the 2003 and 2008 sentencing guidelines is 43. U.S.S.G. § 2A1.1.

9

mind, the instant claim is without merit.

## IV. EVIDENTIARY HEARING

Generally, an evidentiary hearing is required under § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. *United States v. Witherspoon,* 231 F.3d 923, 925–27 (4th Cir. 2000); *Raines v. United States,* 423 F.2d 526, 529–30 (4th Cir. 1970). The district court must hold an evidentiary hearing when the "movant presents a colorable . . . claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue." *United States v. Evans*, 429 F. App'x 213, 214 (4th Cir. 2011) (citations omitted). Whether an evidentiary hearing is necessary is within the discretion of the district court. *Raines,* 423 F.2d at 530. Based on a thorough evaluation of the pleadings and records, it is clear that Taylor is not entitled to relief. Thus there is no need for an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Taylor is entitled to further consideration of his claims. Accordingly, a certificate of appealability is DENIED.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __7th___ day of July 2015.