

UNITED STATES OF AMERICA

v.                                                    **Criminal No. 3:08CR326**

JUSTIN EUGENE TAYLOR,

      Petitioner.

## MEMORANDUM OPINION

Justin Eugene Taylor, a federal inmate proceeding with counsel, brings this successive motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 76). Taylor contends that his firearm conviction and sentence are invalid under *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Government filed a Motion to Dismiss the § 2255 Motion, contending that the relevant statute of limitations bars relief. (ECF No. 81.) The Court subsequently ordered further briefing. In its Supplemental Memorandum, the Government argues, *inter alia*, that Taylor's claim lacks merit.[1] (ECF No. 89.) Taylor filed his Reply. (ECF No. 92.) As discussed below, the Court finds that Taylor's claim lacks merit and may be dismissed on that ground.

### I. Procedural History

On February 4, 2009, a grand jury charged Taylor with: conspiracy to possess with intent to distribute and distribute marijuana (Count One); attempted distribution of marijuana (Count Two); possession of a firearm in furtherance of a drug trafficking crime (Count Three); use and carry of a firearm during and in relation to a drug trafficking crime, to wit, attempting to distribute marijuana as charged in Count Two (Count Four); conspiracy to interfere with

---

[1] In addition to the timeliness arguments made in the Motion to Dismiss, the Government also argues that Taylor's claim is procedurally defaulted. (Supp'l Mem. 10–13.) The Court need not address this argument because the Court finds Taylor's claim lacks merit.

commerce by threats and violence ("Hobbs Act robbery") (Count Five); one count of attempting to aid and abet Hobbs Act robbery (Count Six); and, use and carry of a firearm in furtherance of a felony crime of violence, to wit, "conspiracy to interfere with commerce by armed robbery as charged in Count Five and Interference with Commerce by Threats and Force as charged in Count Six," in violation of 18 U.S.C. § 924(c) (Count Seven). (Sec. Super. Indictment 1–4, ECF No. 17.) On February 13, 2009, Taylor pled guilty to Counts Five and Seven of the Second Superseding Indictment. (Plea Agreement ¶ 1, ECF No. 31.) The Government agreed to dismiss the other five counts. (*Id.* ¶ 12.)

In the Statement of Facts supporting his guilty plea to Counts Five and Seven, Taylor agreed that following facts were true:

Starting before January 1, 2012, and continuing through December 14, 2003, and thereafter, JUSTIN EUGENE TAYLOR conspired with others to distribute and possess with intent to distribute marijuana. In furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others, known and unknown, would obtain wholesale quantities of marijuana and distribute the marijuana to coconspirators for redistribution. Also, in furtherance of this conspiracy, JUSTIN EUGENE TAYLOR and others would arrange wholesale marijuana transactions and, rather than complete the transaction, would take the money from the customer, intentionally fail to distribute the marijuana to the customer, and use the money to finance their own drug trafficking business.

Prior to August 14, 2003, JUSTIN EUGENE TAYLOR met with Martin Sylvester and Jonathan Hartzell. During that meeting JUSTIN EUGENE TAYLOR discussed his ability to supply Martin Sylvester with marijuana for redistribution and exchanged cell phone numbers with Sylvester.

On August 14, 2003, JUSTIN EUGENE TAYLOR arranged to meet Martin Sylvester for the purpose of distributing marijuana to Sylvester so that Sylvester could redistribute the marijuana to others. Per their arrangements, JUSTIN EUGENE TAYLOR met Martin Sylvester and Jonathan Hartzell at the residence of a mutual acquaintance. JUSTIN EUGENE TAYLOR was driven in his car to the residence by his Coconspirator, who dropped off JUSTIN EUGENE TAYLOR without being seen. JUSTIN EUGENE TAYLOR met with Sylvester and Hartzell at the residence and then rode in Hartzell's car with Hartzell and Sylvester to the area of Hanover Avenue and North Lombardy Street, in the City of Richmond, Virginia, in order to obtain marijuana for Sylvester. Upon arriving at that area, JUSTIN EUGENE TAYLOR asked Sylvester for the money to pay for the marijuana, but Sylvester refused to give the money to JUSTIN EUGENE TAYLOR

until he saw the marijuana. JUSTIN EUGENE TAYLOR left Hartzell's vehicle in order to obtain the marijuana, however, he was unable to do so.

JUSTIN EUGENE TAYLOR contacted his Coconspirator and the two of them devised a plan to steal the money that Sylvester had to purchase the marijuana. Pursuant to that plan, the Coconspirator, who was armed with a 9mm semiautomatic pistol, would pose as the drug dealer, meet with Sylvester and demand to see the purchase money. Upon Sylvester showing Coconspirator the money, the plan was for the Conspirator to take the money by force and flee the area with JUSTIN EUGENE TAYLOR, in JUSTIN EUGENE TAYLOR's car. JUSTIN EUGENE TAYLOR did not explicitly plan or agree to kill Martin Scott Silvester [sic].

Pursuant to this plan, the Coconspirator went to the alleyway located between Hanover and Grove Avenues, and North Lombardy and North Vine Streets. JUSTIN EUGENE TAYLOR called Sylvester and told him to meet the man in the alleyway to obtain the marijuana. JUSTIN EUGENE TAYLOR then went to his car to wait for the Coconspirator.

The Coconspirator met Sylvester in the alleyway, displayed the 9mm semiautomatic pistol and demanded Sylvester's marijuana purchase money. Martin Sylvester resisted, the pistol discharged and Martin Sylvester was fatally shot. Martin Sylvester died the next day from a gunshot wound.

The Coconspirator fled to JUSTIN EUGENE TAYLOR's care and the Conspirator and JUSTIN EUGENE TAYLOR fled the area.

(Statement of Facts ¶¶ 1–7 (paragraph numbers omitted).)[2]

On May 24, 2009, the Court entered judgment against Taylor and sentenced him to 240 months of imprisonment on Count Five, and 120 months of imprisonment on Count Seven, to run consecutively. (J. 3, ECF No. 44 (as paginated by CM/ECF).)

By Memorandum Opinion and Order entered on July 7, 2015, the Court denied on the merits Taylor's first § 2255 motion. (ECF Nos. 69, 70.) On June 24, 2016, the Fourth Circuit granted Taylor permission to file a successive § 2255 motion based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). (ECF No. 74.) On June 27, 2016, Taylor filed the instant § 2255 Motion. (ECF No. 76.)

---

[2] It appears that the Government may have spelled the victim's name wrong in the Statement of Facts as the Superseding Indictment spells the victim's name "Silvester" rather than "Sylvester." The Court spells the victim's name as the Government spells it in each document quoted here.

## II. *Johnson v. United States*

In *Johnson v. United States*, the Supreme Court described the impact of the Armed Career Criminal Act "(ACCA")" on federal gun laws and noted that:

> Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation[s] of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1).

135 S. Ct. 2551, 2555 (2015) (citations omitted).

The ACCA defines a violent felony as: "any crime punishable by imprisonment for a term exceeding one year" and "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B) (emphasis added). "The closing words of this definition, italicized above, have come to be known as the Act's residual clause." *Johnson*, 135 S. Ct. at 2556. In *Johnson*, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague because the clause encompassed "conduct that presents a serious potential risk of physical injury to another," which defied clear definition. *Id.* at 2557–58 (citation omitted). Subsequently, in *Welch v. United States*, the Supreme Court held that "*Johnson* announced a substantive rule [of law] that has retroactive effect in cases on collateral review." 136 S. Ct. 1257, 1268 (2016).

## III. Analysis

Taylor asserts that the substantive rule announced in *Johnson* affords him relief. However, Taylor's claim lacks merit. *See United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.

1994) (noting that a district court may summarily dismiss a § 2255 motion where "files, and records 'show conclusively that the movant is not entitled to relief'" (quoting *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992))). Taylor pled guilty to conspiracy to commit Hobbs Act robbery and using and carrying a firearm in furtherance of a felony crime of violence, to wit, "conspiracy to interfere with commerce by armed robbery as charged in Count Five and attempting to aid and abet Interference with Commerce by Threats and Force as charged in Count Six." (Sec. Super. Indictment 3–4.)[3] Taylor contends that, after *Johnson*, the offenses of attempting to aid and abet Hobbs Act robbery and conspiracy to commit Hobbs Act robbery can no longer qualify as a crime of violence under 18 U.S.C. § 924(c)(3), and thus the Court must vacate his conviction for Count Seven.[4] Taylor is incorrect.

At the time of Taylor's conviction, the United States could demonstrate that an underlying offense constituted a crime of violence if it established that the offense was a felony and satisfied one of two requirements. Namely, the statute defines a crime of violence as any felony:

    **(A)** [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or

    **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

*Id.* § 924(c)(3). The Supreme Court recently invalidated the Residual Clause. *United States v.*

---

[3] Both Counts Five and Six arose from the robbery and killing of Martin Silvester on August 14, 2002. (Sec. Superseding Ind. 3–4.)

[4] Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence. The baseline additional period of imprisonment is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the defendant brandishes the firearm, the additional period of imprisonment increases to at least seven years. *Id.* § 924(c)(1)(A)(ii). And, if the defendant discharges the firearm, the additional period of imprisonment increases to at least ten years. *Id.* § 924(c)(1)(A)(iii).

*Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that "§ 924(c)(3)(B) is unconstitutionally vague"). Despite the invalidity of the Residual Clause, attempting to aid and abet Hobbs Act robbery qualifies as a crime of violence under the Force Clause.

Here, Taylor's § 924(c) conviction was predicated on two counts: conspiracy to commit Hobbs Act robbery as charged in Count Five *and* attempting to aid and abet Hobbs Act robbery as charged in Count Six. (Indictment 4.) The Hobbs Act makes it a crime to obstruct, delay, or affect commerce "by robbery" or to "attempt[ ] or conspire[ ] to do so" or to "commit[ ] or threaten[ ] physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section. . . . " 18 U.S.C. § 1951(a). "Robbery" under the Hobbs Act is defined as "the unlawful taking or obtaining of personal property" from a person "by means of actual or threatened force, or violence, or fear of injury, immediate or future." *Id.* § 1951(b)(1).

Hobbs Act robbery remains a qualifying crime of violence under the Force Clause. *United States v. Mathis*, --- F.3d ----, Nos. 16–4633, 16–4635, 16–4637, 16–4641, 16–4837, 16–4838, 2019 WL 3437626, at *16 (4th Cir. July 31, 2019) (citations omitted) (holding that "Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)"). Although the Fourth Circuit has invalidated any reliance on *conspiracy* to commit Hobbs Act robbery as a predicate crime of violence for § 924(c), *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019), attempting to aid and abet Hobbs Act robbery constitutes a valid crime of violence under the Force Clause because it invariably requires the actual, attempted, or threatened use of physical force. *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1394 (2019) ("attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of force"); *see Mathis*, 2019 WL 3437626, at *16; *see also In re Colon*, 826 F.3d 1301, 1305 (11th

6

Cir. 2016) (because aiding and abetting presents an alternative charge that permits one to be found guilty as a principal, "conviction for aiding and abetting a Hobbs Act robbery qualifies as a 'crime of violence' under the § 924(c)(3)(A) use-of-force clause"). And because the substantive offense of Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," then an aider and abettor of a Hobbs Act robbery necessarily commits a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Accordingly, Taylor's conviction for attempted aiding and abetting a Hobbs Act robbery qualifies as a "crime of violence" under the § 924(c)(3)(A) Force Clause, without regard to the § 924(c)(3)(B) Residual Clause.

Thus, Taylor's conviction remains valid after *Johnson* and its progeny because it was predicated on attempting to aid and abet Hobbs Act robbery charged in Count Six. *See United States v. Doyle*, No. 2:18cr177, 2019 WL 3225705, at *3–4 (E.D. Va. July 17, 2019) (finding § 924(c) conviction valid when based on both conspiracy to commit Hobbs Act robbery and Hobbs Act robbery); *cf. United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016) (explaining that "the court need not reach the merits of this argument . . . [because]" a § 924(c) conviction predicated on *both* conspiracy to commit Hobbs Act robbery and in furtherance of a drug trafficking crime is not affected by *Johnson*). Accordingly, Taylor's claim pursuant to *Johnson* lacks merit and will be DISMISSED.

### III. Conclusion

The § 2255 Motion (ECF No. 76) will be DENIED. The Government's Motion to Dismiss (ECF No. 81) will be DENIED as MOOT. Taylor's claim and the action will be DISMISSED.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Taylor has not satisfied this standard. Accordingly, a COA will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

_____
M. Hannah Lauck
United States District Judge

Date: August 26, 2019
Richmond, Virginia

8